**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAREN N. FLIGGE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 08-800** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.     Introduction

Plaintiff Karen N. Fligge ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed during the administrative proceedings. Doc. Nos. 7 & 10.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the medical and testimonial evidence contained in the record, the Court is convinced that the decision of the Commissioner is not "supported by substantial evidence" within the meaning of § 405(g). Therefore, the Court will deny Plaintiff's motion for summary judgment insofar as it seeks an award of benefits, grant Plaintiff's motion for summary judgment insofar as it seeks a remand for further administrative proceedings, deny the Commissioner's motion for summary judgment, vacate the administrative decision currently under review, and remand the

case for further administrative proceedings.

## II.    Procedural History

Plaintiff applied for DIB on November 7, 2002, with a protective filing date of October 16, 2002, alleging disability as of October 1, 2001, due to insulin-dependent diabetes, coronary artery disease, hypertension, depression and tachycardia.  R. 30.  After the initial denial of this application by the state agency, a hearing was held in Latrobe, Pennsylvania, before Administrative Law Judge Robert C. Deitch ("Judge Deitch").  R. 341-371.  On May 24, 2004, Judge Deitch issued a decision that was partially favorable and partially unfavorable to Plaintiff. R. 28-38.  It was determined that Plaintiff had been disabled from October 1, 2001, through September 23, 2003, but that she had regained the capacity to engage in substantial gainful activity as of September 24, 2003.  R. 38.  Consequently, Plaintiff was entitled to a closed period of disability.  The Appeals Council denied Plaintiff's request for review on November 15, 2004. R. 39.

Plaintiff filed a second application for DIB on December 31, 2004, alleging disability as of September 24, 2003, due to chronic ischemic heart disease, coronary artery disease, insulin-dependent diabetes mellitus with neuropathy and retinopathy, chronic back pain syndrome, ulcers, bilateral carpal tunnel syndrome, a gallbladder disorder, cataracts, and an affective disorder characterized by depression.  R. 14.  The state agency denied the claim on March 4, 2005.  R. 48.  On March 31, 2005, Plaintiff filed a timely request for an administrative hearing. R. 53.  Pursuant to this request, a hearing was held on January 5, 2006, in Latrobe, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo ("Judge Abruzzo" or the "ALJ").  R. 372-418.  In a decision dated June 28, 2006, the ALJ determined that Plaintiff was not "disabled"

within the meaning of the Act. R. 11-21. Plaintiff's request for review was denied by the Appeals Council on September 28, 2006. R. 5.

On November 21, 2006, Plaintiff commenced an action against the Commissioner. CV-06-1561, Doc. No. 1. After the filing of cross-motions for summary judgment, this Court vacated the Commissioner's administrative decision, and remanded the case for further proceedings, on April 27, 2007. CV-06-1561, Doc. No. 10. In response to the Court's remand order, the Appeals Council remanded the case back to the ALJ. R. 459. On October 29, 2007, another hearing was held before the ALJ in Johnstown, Pennsylvania. R. 572-602. In a decision dated February 14, 2008, the ALJ again concluded that Plaintiff was not "disabled" within the meaning of the Act. R. 419-432. Plaintiff responded by commencing the instant action against the Commissioner on June 11, 2008. Doc. No. 1. Plaintiff and the Commissioner filed motions for summary judgment on October 3, 2008, and November 3, 2008, respectively. Doc. Nos. 7 & 10. These motions are the subject of this memorandum opinion.

## III.    Statement of the Case

In his decision, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2.    The claimant has not engaged in substantial gainful activity since September 24, 2003, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3.    The claimant has the following medically determinable impairments: obesity, coronary artery disease, hypertension, hyperlipidemia, tachycardia, bilateral carpal tunnel syndrome, right sciatic neuropathy, insulin dependent diabetes mellitus with retinopathy, stomach ulcers/gastritis, cholecystitis, a depressive disorder and a dysthymic disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that

has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521).

5.      Should any reviewing authority reweigh the evidence and determine the claimant does have a "severe" impairment, the undersigned specifically finds, in the alternative, the claimant is capable of work in the heavy exertional level which is not in the medical field and capable of performing other employment which exists in significant numbers in the local and national economies.

6.      The claimant has not been under a disability, as defined in the Social Security Act, from September 24, 2003, through the date of this decision (20 CFR 404.1520(c)).

R. 424-431. Plaintiff argues that the ALJ erred in determining that her impairments were not "severe," that his assessment of her credibility is not supported by substantial evidence, and that his opinion reflects a bias that he has against her. Doc. No. 8, pp. 8-26.

## IV.    Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

transcripts and records upon which a determination of the Commissioner is based. Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding e standards under Title

XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations

and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and

applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493

U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.

Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing

Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,*

402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005);

*Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59

(3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as

"less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*,

312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and

Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the

substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW,* 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford,* 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.,* 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen,* 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the

claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth

step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at

59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's

eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli ,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other

substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously

requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to*

*refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they must always be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

the distinction between medical opinions entitled to controlling weight and those reserved to the

Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

to controlling weight does not mean that the opinion is rejected. It may still be entitled to

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

17

deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**V.    Discussion**

The context of the present controversy can only be understood by reference to the prior administrative decisions made with respect to Plaintiff.  It is undisputed that Plaintiff has not engaged in substantial gainful activity since her initial onset date of October 1, 2001.  In his decision of May 24, 2004, Judge Deitch found Plaintiff to be suffering from "coronary artery disease with residuals of stent placements and coronary artery bypass grafting times two, insulin-dependent diabetes mellitus with retinopathy and neuropathy and depression, dysthymia and a personality disorder."  R. 31.  Although these impairments were deemed to be "severe" for

purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listing of Impairments"). *Id.* In accordance with 20 C.F.R. § 404.1545, Judge Deitch made the following determination with respect to Plaintiff's residual functional capacity:

> As a result of the claimant's coronary artery disease with residuals of stent placements and coronary artery bypass grafting times two, insulin-dependent diabetes mellitus with retinopathy and neuropathy and depression, dysthymia and a personality disorder, the undersigned concludes she is precluded from performing more than light work activity. Further, she needs to alternate sitting and standing no more than four times an hour, is limited to occasional postural movements including balancing, stooping, kneeling, crouching, crawling and climbing, needs to avoid concentrate exposure to fumes, dusts, environments with poor ventilation and temperature extremes and is limited to simple, routine, repetitive tasks. Further, between October 1, 2001 and September 23, 2003, she required excessive absences due to periods of hospitalization, surgeries and recovery periods.

R. 35. At the time of Judge Deitch's decision, Plaintiff was forty-nine years of age, making her a "younger person" under 20 C.F.R. § 404.1563(c). R. 37. Based on the applicable residual functional capacity assessment, it was determined that Plaintiff could not return to her past relevant work as "a medium, skilled licensed practical nurse." R. 35. Nevertheless, Judge Deitch concluded that, after September 23, 2003, Plaintiff had been able to work as an assembler, a hospital product assembler, a light fixture assembler, a plastic products inspector, a hand packager, or a surveillance system monitor. R. 36. Vocational expert testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). *Id.* Judge Deitch determined that Plaintiff had been unable to work between October 1, 2001, and September 23, 2003, due to her need for more absences than those typically allowed or tolerated by an employer. R. 35-36.

Judge Abruzzo's decision of June 28, 2006, determined that Plaintiff had not been disabled at any time on or after September 24, 2003. R. 14-21. Plaintiff was found to be suffering from chronic ischemic heart disease, coronary artery disease, insulin-dependent diabetes mellitus with neuropathy and retinopathy, chronic back pain syndrome, ulcers, bilateral carpal tunnel syndrome, a gallbladder disorder, cataracts, and an affective disorder characterized by depression. R. 15. The ALJ specifically concluded that these impairments were "severe," since they restricted Plaintiff's "ability to perform basic work functions." *Id.* He further concluded that these impairments did not meet or medically equal an impairment found in the Listing of Impairments. R. 15-16. Since Plaintiff was not deemed to be *per se* disabled, the ALJ proceeded to assess her residual functional capacity as follows:

> The undersigned finds that the claimant has the residual functional capacity to perform heavy work, as defined and described in the Social Security Rules and Regulations, which would [] not require the claimant to work in the healthcare industry.

R. 19. Testimony given by vocational expert Morton Morris ("Morris") categorized Plaintiff's past relevant work as "skilled work" at the heavy exertional level. R. 407. Because that work had been in the healthcare industry, the ALJ determined that Plaintiff could not return to her past relevant work. R. 19. Nevertheless, he concluded that Plaintiff could work as a cleaner, lumber stacker, packager, ticket taker, sorter, system monitor or hand bagger. R. 20. Morton's testimony established that these jobs existed in the national economy within the meaning of the Act. R. 407-409. Thus, Plaintiff was not found to be statutorily disabled as of September 24, 2003. R. 20.

Plaintiff's previous action in this Court resulted in a vacatur of the Commissioner's

administrative decision, and a remand for further administrative proceedings. This Court

determined that the ALJ had failed to properly evaluate Plaintiff's diabetes mellitus "under the

specific parameters of Listing 9.08." R. 453. It was also noted that the ALJ had given "short

shrift" to Plaintiff's subjective complaints in determining her residual functional capacity. R.

455.

Listing 9.08, which was referenced in the Court's opinion in Plaintiff's earlier action,

describes the "listed impairment" as follows:

> 9.08 *Diabetes mellitus*. With:
> A. Neuropathy demonstrated by significant and persistent disorganization of
> motor function in two extremities resulting in sustained disturbance of gross and
> dexterous movements, or gait and station (see 11.00C); or
> B. Acidosis occurring at least on the average of once every 2 months documented
> by appropriate blood chemical tests (pH or PCO2 or bicarbonate levels); or
> C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02,
> 2.03, or 2.04.

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing 9.08. Listing 11.00C, which is referenced in

Listing 9.08, provides:

> C. *Persistent disorganization of motor function* in the form of paresis or
> paralysis, tremor or other involuntary movements, ataxia and sensory disturbances
> (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or
> peripheral nerve dysfunction) which occur singly or in various combinations,
> frequently provides the sole or partial basis for decision in cases of neurological
> impairment. The assessment of impairment depends on the degree of interference
> with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listing 11.00C. Listings 2.02, 2.03 and 2.04, which

are referenced in Listing 9.08, provide:

> 2.02 *Impairment of visual acuity*. Remaining vision in the better eye after best
> correction is 20/200 or less.

2.03 *Contraction of peripheral visual fields in the better eye.*
A. To 10° or less from the point of fixation; or
B. So the widest diameter subtends an angle no greater than 20°; or
C. To 20 percent or less visual field efficiency.
2.04 *Loss of visual efficiency.* The visual efficiency of the better eye after best correction is 20 percent or less. (The percent of remaining visual efficiency is equal to the product of the percent of remaining visual acuity efficiency and the percent of remaining visual field efficiency.)

20 C.F.R. Pt. 404, Subpart P, Appendix 1, Listings 2.02, 2.03 and 2.04.

In his decision of February 14, 2008, the ALJ found Plaintiff to be suffering from obesity, coronary artery disease, hypertension, hyperlipidemia, tachycardia, bilateral carpal tunnel syndrome, right sciatic neuropathy, insulin dependent diabetes mellitus with retinopathy, stomach ulcers/gastritis, cholecystitis, a depressive disorder, and a dysthymic disorder. R. 425. This time, however, the ALJ determined that Plaintiff's impairments (both singularly and in combination) were "non-severe." R. 425-431. This determination essentially mooted the applicability of Listing 9.08, since a claimant without a severe impairment loses at the second step of the sequential evaluation process without the need for further inquiries concerning the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ also made the following alternative finding:

> Should any reviewing authority reweigh the evidence and determine the claimant does have a "severe" impairment, the undersigned specifically finds, in the alternative, the claimant is capable of work in the heavy exertional level which is not in the medical field and capable of performing other employment which exists in significant numbers in the local and national economies.

R. 431. Given these findings, Plaintiff was not found to be statutorily disabled.

Plaintiff vigorously challenges the ALJ's conclusion that she does not suffer from a

"severe" impairment. Doc. No. 8, pp. 8-14. A "non-severe" impairment is "[a]n impairment or combination of impairments" that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Congress has made it clear that, "[i]n determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under [the Act], the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B). Plaintiff, of course, has multiple impairments. Moreover, the United States Court of Appeals for the Third Circuit has stated that the burden placed on a claimant at the second step of the sequential evaluation process "is not an exacting one." *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). The second step is generally viewed only as a *de minimis* screening device designed to dispose of patently groundless or frivolous claims. *Newell v. Commissioner of Social Security*, 347 F.3d 541, 546 (3d Cir. 2003). "If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." *Id.* Because the second step is rarely utilized as a basis for denying benefits, "its invocation is certain to raise a judicial eyebrow." *McCrea*, 370 F.3d at 361.

Given the evidence of Plaintiff's multiple impairments, it is doubtful that the ALJ's conclusion that these impairments (either singularly or in combination) are "non-severe" could be sustained under the "substantial evidence" standard. The Court need not directly confront that question, however, since the ALJ's reexamination of this issue on remand was impermissible.

The relevant portion of 42 U.S.C. § 405(h) provides:

> The findings and decisions of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

42 U.S.C. § 405(h). By its express terms, § 405(h) "gives finality to *findings*, as well as decisions, made in previous proceedings between the parties." *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391, 1392 (4th Cir. 1987)(emphasis in original). Although the Court's remand order clearly contemplated a reexamination of the third, fourth and fifth steps of the sequential evaluation process, it did not give the ALJ a license to reconsider *his own* prior determination that Plaintiff's impairments were "severe" for purposes of the second step of the process. R. 453-456. This is not a situation in which the ALJ was dealing with a different period of time than the one at issue during a previous proceeding. *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996). Instead, the ALJ's "non-severity" determination concerns the same period of time for which he had previously found Plaintiff's impairments to be "severe." Under these circumstances, § 405(h) precluded the ALJ from finding Plaintiff's impairments to be "non-severe." *Dennard v. Secretary of Health & Human Services*, 907 F.2d 598, 599-600 (6th Cir. 1990). Consequently, the principal ground for the ALJ's decision is erroneous as a matter of law.

The ALJ made an alternative finding that Plaintiff was capable of work at the heavy exertional level, excluding work in the medical field. R. 431. The ALJ determined that Plaintiff could perform heavy work[6] despite the fact that a state agency physician had opined that she was

---

[6]"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 404.1567(d).

limited to medium work.[7]  R. 430.  He did not cite any medical evidence to support a

determination that Plaintiff could perform heavy work.  Even if this alternative determination

were "supported by substantial evidence," it could not alone sustain the ultimate finding of non-

disability.  The principal basis for the Court's prior remand order was the ALJ's failure to

evaluate Plaintiff's diabetes mellitus under Listing 9.08.  R. 453-456.  If Plaintiff had been found

to be *per se* disabled at the third step of the sequential evaluation process, there would have been

no need for the ALJ to assess her residual functional capacity, or to inquire as to whether jobs

existed in the national economy that she could perform.  20 C.F.R. § 404.1520(a)(4)(iii)("If you

have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and

meets the duration requirement, we will find that *you are disabled*.")(emphasis added).

The ALJ's erroneous finding at the second step of the process appears to have prevented

him from making a specific finding at the third step.  Nevertheless, as a part of his explanation

for finding Plaintiff's impairments to be "non-severe," the ALJ made the following observations:

> The medical evidence also shows the claimant is obese with a history of insulin
> dependent diabetes mellitus with retinopathy which the undersigned has
> considered in accordance with the criteria set forth in Listing 9.08.  However, in
> April 2004, Dr. Thierry C. Verstraeten, an examining ophthalmic specialist,
> reported that the claimant had 20/100 vision in the right eye and 20/20 vision with
> myopic correction in the left eye and that the claimant displayed no evidence of
> proliferative diabetic retinopathy or exudation in either eye (Exhibit B7F).  In
> addition, a physical examination in August 2005 by Dr. Mani Bashyam, a treating
> board certified endocrinologist, revealed normal sensation of the feet with 2+
> peripheral pulses and no deformities or ulcers; and Dr. Bashyam noted that the
> claimant's retinopathy was stable (Exhibit B12F).  Likewise, a physical
> examination in October 2005 by Dr. Chirigos revealed intact/equal pulses
> bilaterally with no edema of the extremities; and Dr. Chirigos indicated that the
> claimant denied experiencing lightheadedness, dizziness or syncope (Exhibit

---

[7]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

B13F).

> Although Dr. Chirigos subsequently reported in April 2007 that the claimant's diabetes mellitus was uncontrolled, the evidence suggests that the claimant is manipulating her blood sugars by adjusting her carbohydrate intake, since she is on a programmable insulin pump which would normally level out her blood sugar aberrations. Moreover, she frequently "forgets" to bring her blood sugar readings log to her doctor appointments.

R. 426-427. The concluding portion of this passage indicates that the ALJ may have attempted to minimize the extent of Plaintiff's diabetes mellitus by adopting his own interpretation of the medical evidence. This was not permissible. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)("We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so.").

In its opinion remanding Plaintiff's case to the Commissioner, the Court expressed concern that the ALJ had given "short shrift" to Plaintiff's "extensive work history." R. 455. At the hearing conducted after the remand, the ALJ stated that he was a "dead duck" if Plaintiff's work history was all that he could consider, since her work history was "excellent." R. 601. Nevertheless, in his opinion, the ALJ stated as follows:

> The undersigned notes the claimant has training and work experience as a licensed practical nurse and she previously testified that she carefully researched her alleged impairments on the Internet, including symptoms and medication side effects. Indeed, at the prior hearing, the claimant recited her numerous symptoms as if reading from a textbook. It is noted that the physicians' medical records include similar recitations of numerous and serious symptoms, but the objective medical tests are generally negative or only mildly positive and not supportive of the claimant's recited symptoms. The undersigned cannot avoid the possibility that the claimant has contrived her recitation of symptoms in order to manipulate the health care system and the disability system.

R. 430. This analysis is not what the Court had in mind when it remanded Plaintiff's case to the

Commissioner with the admonition that "[a]n ALJ must give serious consideration to all of the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence."  R. 455.

Under the present circumstances, the Commissioner's administrative decision cannot stand.  It is regrettable that Plaintiff, two years after this Court's opinion of April 27, 2007, is right back where she was at the time of the opinion's issuance.  While she acknowledges that a remand for further proceedings would be warranted under ordinary circumstances, she contends that the unique circumstances of this case warrant an immediate award of benefits.  Doc. No. 8, pp. 23-26.  In support of her position, she relies on the decision of the United States Court of Appeals for the Third Circuit in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).  In *Morales*, the Court of Appeals directed an immediate award of benefits in a situation where a claimant had been through two administrative hearings, two petitions to the Appeals Council, two actions in a federal district court, and an appeal to the Court of Appeals, totaling a period of ten years.  *Morales*, 225 F.3d at 320.  In that case, however, it was clear that the evidence in the record warranted a finding of disability.  *Id.*  The same cannot be said about the present case.  In his opinion of May 24, 2004, Judge Deitch concluded that Plaintiff, who had established the existence of a statutory disability from October 1, 2001, through September 23, 2003, had ceased to be disabled as of September 24, 2004.  R. 38.  Judge Deitch specifically determined that Plaintiff's diabetes mellitus did not meet or medically equal an impairment found in Listing 9.08.  R. 32.  At the hearing conducted on January 5, 2006, Plaintiff's counsel invited Judge Abruzzo to reconsider Judge Deitch's conclusion that Plaintiff was no longer disabled as of September 23, 2004.  R. 416-417.  The Commissioner's regulations permit the reopening of a prior

28

administrative decision under certain circumstances.  20 C.F.R. §§ 404.987-404.989.  Since

Judge Abruzzo addressed the merits of Plaintiff's claims without referencing Judge Deitch's

decision, his opinion of June 28, 2006, constituted a *sub silentio* reopening of Judge Deitch's

determination that Plaintiff's disability had ceased on September 23, 2004.  *Purter v. Heckler*,

771 F.2d 682, 696, n. 14 (3d Cir. 1985).  In light of Judge Deitch's previous decision, however,

the Court cannot conclude that the record clearly establishes that Plaintiff was statutorily disabled

on or after September 24, 2003.  Accordingly, another remand is the appropriate remedy.

*Podedworny v. Harris*, 745 F.2d 210, 221-222 (3d Cir. 1984)("The decision to direct the district

court to award benefits should be made only when the administrative record of the case has been

fully developed and when substantial evidence on the record as a whole indicates that the

claimant is disabled and entitled to benefits.").

     It remains to be determined whether Plaintiff is entitled to have her case heard by a

different ALJ.  A reviewing court has no general authority to dictate to the Commissioner

whether a particular ALJ should or should not be assigned to a particular case.  *Travis v.

Sullivan*, 985 F.2d 919, 924 (7th Cir. 1993).  Where a showing of bias on the part of an ALJ has

been made, however, a claimant can obtain a judicial determination that he or she is entitled to

have his or her case heard by a different ALJ on remand.  *Ventura v. Shalala*, 55 F.3d 900, 902-

905 (3d Cir. 1995).  In an attempt to make the requisite showing of bias, Plaintiff relies not only

on the ALJ's allegation that she had artificially exacerbated her blood sugar levels in order to

obtain benefits, but also on public statements made by the ALJ manifesting a generalized belief

that Social Security disability claimants are often coached by their attorneys to manipulate the

system.  Doc. No. 8, pp. 27-28.  The Court need not evaluate the question of whether the ALJ's

treatment of Plaintiff evinced a *personal* bias against her, since the policy considerations underlying the issue of bias necessitate the reassignment of Plaintiff's case to a different adjudicator in any event. The focus of any "bias" inquiry is on whether the adjudicator in question can render a fair judgment. *Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). There is no need for speculation in this case, since the ALJ has already demonstrated a reluctance (or perhaps an *unwillingness*) to adhere to the Court's instructions on remand with respect to this particular claimant. Because the ALJ attempted to circumvent this Court's prior remand order, Plaintiff's case is right back where it was two years ago. Regardless of *why* the ALJ approached Plaintiff's case in the manner that he did, the Court is convinced that the Commissioner should assign this case to a different adjudicator on remand. Any other determination would risk a further waste of valuable judicial and administrative resources.

## VI. Conclusion

Because the Commissioner's decision is not "supported by substantial evidence," the Court must vacate his administrative decision yet again, and remand this case for further proceedings. In order to avoid a further waste of valuable judicial and administrative resources, Plaintiff is entitled to have her case heard by a different ALJ on remand, unless the Commissioner determines that Plaintiff is entitled to benefits without the need for another hearing. If the Commissioner finds it necessary to assess Plaintiff's residual functional capacity, he must be sure to carefully consider all of her credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). While it is the Commissioner's prerogative to evaluate the evidence, he is not free to mischaracterize it. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

Accordingly, the motion for summary judgment filed by the Commissioner will be denied, and the motion for summary judgment filed by Plaintiff will be denied insofar as it seeks an award of benefits and granted insofar as it seeks a remand for further administrative proceedings. In accordance with the fourth sentence of § 405(g), the Commissioner's administrative decision will be vacated, and the case will be remanded for further administrative proceedings, before a different adjudicator, ***consistent with this opinion***. An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All counsel of record